## THE KING *vs.* AKANA.

EXCEPTIONS FROM THE NOVEMBER TERM OF THE THIRD JUDI-
CIAL CIRCUIT COURT. BICKERTON, J., PRESIDING.

JANUARY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Trial for murder. Evidence of the declarations of the dead man
about his business relations with the prisoner, made several days
before the murder, is hearsay and not admissible.

Where such evidence goes to the jury, and other evidence, covering
the same ground and properly admitted, is given to the jury, the
improper admission of the hearsay evidence is not a ground for a
new trial.

It was shown that the prisoner and the deceased and an old woman
lived in the same house, which was destroyed by fire at the time
of the murder, with the body of the deceased in it at the time.
Just before the murder the prisoner took the old woman to
another house, giving mysterious and unintelligible reasons
therefor.

Held that, with this evidence, the question by the prosecution to a
crown witness, " Did the deceased ask you to do anything for the
old woman, Kanoa, when you met him between three and four
o'clock on Saturday, November 3d (the day of the murder), at
the house which was burnt?" was material as tending to show
the relations between the deceased and the old woman and as
tending to throw light upon the suspicious circumstance of the
removal of the old woman by the prisoner just before the fire and
the murder. The importance of this question was increased by
the prisoner's own testimony later in the trial, to the effect that
he removed the old woman because the deceased did not take
care of her and asked him to take her away.

A person arrested on suspicion only is not, in the absence of further
proceedings against him, disqualified as a witness in the trial of
others for the offense for which he was arrested on suspicion.

Defendant's request to charge the jury as follows: "To justify the
inference of legal guilt from circumstantial evidence, the exist-
ence of the inculpatory facts must be absolutely incompatible

with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of guilt," properly refused.

Where refusal to charge as requested is excepted to, bill of exceptions should contain the instructions given by the Court in lieu of the instructions refused, or else should show that no instructions were given covering the ground.

Defendant's request, to charge the jury as follows: "Circumstantial evidence is to be viewed with distrust and to justify a conviction on such evidence, it is necessary to exclude every possible hypothesis of innocence," properly refused. "Every *reasonable* hypothesis," instead of every possible hypothesis, would have made the instruction allowable.

A motion for a new trial of a criminal cause tried in a Circuit Court must be addressed to the Supreme Court.

## OPINION OF THE COURT BY DOLE, J.

The prisoner was on trial for the murder of a man named Ah Sing or Ah Sin, who had been living at the same house with him in South Kona, on the Island of Hawaii. A few days before the death of Ah Sing, the prisoner moved to another house in the neighborhood with his wife. In the evening of November 3d, 1888, the house occupied by Ah Sing was discovered to be on fire and Ah Sing was missing; the next morning the charred remains of a human body were found in the debris of the burned house, which were recognized to be those of Ah Sing. There were cuts still discernable on the breast as the body was face downwards, and a cleaver was found close to the body. Bloody clothes were found in a pail of water some 100 feet away from the burnt house, and bloody water on lauhala leaves near the pail, as if the clothes had been partially washed. The prisoner admitted that the clothes were his to witnesses, but denied it in Court. The prisoner had two wounds on his head; one appeared to have been cut by some sharp instrument and one finger had marks on it as if it had been bitten. During the direct examination of John Kalua at the trial, one of the witnesses for the prosecution, he was asked, "Did Ah Sing tell you defendant was indebted to him?" This question was

objected to by the defense and the objection sustained by the Court. After the cross-examination the witness was asked the question "Do you know of any other trouble between Ah Sing and defendant?" The witness answered: "A few days before this, Ah Sing told me Akana was indebted to him in a large amount." The defense objected to the admission of this answer on the ground that it was not a dying statement; the Court overruled the objection and admitted the testimony on the ground that it was a re-direct examination on new matter brought out upon cross-examination. To this ruling the prisoner's counsel excepted. The witness went on to say that Ah Sing told him that the amount of the debt was $200; that if he got the money, or part of it, he would go to Honolulu and thence to China. All this is hearsay testimony and should have been excluded as such. But we find that Iwikau, another witness for the prosecution, testified on his direct examination that the prisoner said he was indebted to Ah Sing, and that he (prisoner) told witness that Ah Sing asked for the money shortly after prisoner's marriage on the previous July 6th. We find also that Alo, a witness for the prosecution, testified that the prisoner owed Ah Sing over $100; that he was present at a quarrel between the prisoner and Ah Sing the day before the murder, in which the latter repeatedly demanded of the prisoner the payment of money which he claimed, and that Akana told witness that he did not have the money then but when he got the money he would pay it, but did not state the amount of the debt; it is also in evidence that the prisoner, who took the witness stand in his own defense, said on his cross-examination that he was indebted to Ah Sing in the sum of $25 only; that he had paid him installments on account; that at the time of the fire he did not know how much he owed him; that Ah Sing demanded the money and that he told him he would pay him when he got the money. It therefore appeared by competent evidence that the prisoner owed money to Ah Sing previous to the murder and that Ah Sing was pressing him for it. As to the amount of this debt, enough appears from this other evi-

dence to show that it was large enough to be of importance to
Ah Sing and that it was the cause of some irritation between
him and the prisoner.  Under these circumstances, therefore,
there is no reason to apprehend that the evidence objected to
could have had any improper influence upon the jury, the same
point being well covered by other evidence properly admitted.

The second exception was to the ruling of the Court allowing
the following question to be asked the witness, John Kalua, by
the prosecution on the direct examination, to-wit: "Did Ah
Sing ask you to do anything for the old woman, Kanoa, when
you met him between 3 and 4 o'clock on Saturday, November
3d, at the house burnt?" The prisoner's counsel objected to
this question as being immaterial.

We find that evidence was taken before this question was
asked, to the effect that on the afternoon before the fire the
prisoner took the said Kanoa, who was living at the same house
with Ah Sing, to another house some distance away and made
arrangements to have her taken care of by the people of the
house, and explained to them that the old woman ought not to
stay at the house with Ah Sing or she would die, and if Ah Sing
did not get a wife he also would die.  The mere removal of the
old woman from the house that was destroyed by fire later the
same evening, and in the ruins of which Ah Sing's remains were
found, was a suspicious circumstance, and the reasons given by
the prisoner for the change and testified to by witnesses at the
trial added much to its suspicious character.  With this evi-
dence before the Court, any information relating to Kanoa's
relations with Ah Sing was desirable in the way of ascertaining
if possible the real reason for her being taken away by the
prisoner, or the meaning of his extraordinary statement of his
reasons for taking her away.  The testimony of the prisoner,
that he took Kanoa away because Ah Sing did not take care of
her and asked him to take her away, adds much to the
relevancy and importance of the question objected to.

A third exception was made to the admission of Alo as a wit-
ness for the prosecution against the objection of prisoner's

counsel—that the said Alo had been arrested on suspicion of having been connected with the murder of Ah Sing and was therefore an incompetent witness, unless he had been cleared of the record. It appears by the evidence in the case that Alo was arrested upon suspicion, but he was not committed for trial nor indicted, and the attorney for the prosecution stated to the Court that he was under no charge and was only held as a witness. Under these circumstances he was not disqualified as a witness.

The prisoner's counsel asked the Court to charge the jury as follows:

"1st. To justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of guilt."

This instruction was refused and the ruling excepted to.

This instruction seems capable of a meaning, by a refinement of interpretation, that would correctly state the law, but it is undesirable to instruct a jury through language difficult of comprehension or capable of several meanings or tending to mental confusion, and it was not only proper for the Court but it was its duty to refuse to give the instruction in the form asked.

The marginal notes to the instruction, in the handwriting of the Presiding Justice, and which are before us as a part of the bill of exceptions, are as follows: "Not in this form—but will charge on reasonable doubt covering this." At the request of the prisoner's counsel the Court charged the jury as follows, which includes some slight modifications of the instructions prayed for:

"To convict, the jury must be satisfied from the circumstances that the defendant is the person by whom the death of the deceased was caused."

"If the jury believe that the evidence is insufficient to bring the act home to defendant, they must acquit."

"The presumption of innocence always prevails in favor of the defendant; Crown must prove their case."

" It is fairly within the province of the jury to adopt a theory of the cause of death of deceased other than that offered by the prosecution—must draw their conclusions from the evidence."

The bill of exceptions does not report any part of the charge of the court except that portion given at the request of prisoner's counsel. It seems to us that it was incumbent upon him to place in the bill of exceptions the instructions given by the court in lieu of this first instruction which was refused, or else to show that no instructions whatever were given covering the ground raised by that instruction, and that such failure was excepted to; he has done neither, and we do not find that this instruction was improperly refused. An instruction to the jury in these exact words was held erroneous in *People vs. Murray*, 41 Cal., 67. See *Rex vs. Ahopa*, January Term, 1889. (*Post*, p. 556).

The prisoner's counsel also requested the court to give the following instruction, which was refused and refusal excepted to : " Circumstantial evidence is to be viewed with distrust, and to justify a conviction on such evidence it is necessary to exclude every possible hypothesis of innocence."

The Court properly refused to give this instruction for it does not state the law. If it had read " every *reasonable* hypothesis of innocence" in the last part, it would have been a correct instruction. The following sentence from *Brown vs. State*, 105 Ind., 385, clearly and briefly sets forth the rule : " When the facts proved are susceptible of explanation upon no reasonable hypothesis consistent with innocence, and point to a guilt beyond any other reasonable solution, then they are sufficient to rest a conviction upon, although the crime is of the utmost malignity and the penalty attached is the highest known to the law."

We therefore overrule all of the said exceptions.

The bill of exceptions further recites that the " jury returned a unanimous verdict of guilty, to which counsel for defendant duly excepted, as being contrary to law and the evidence, and gave notice of motion for new trial as will appear by reference to Exhibit E, which is hereto attached and made part

hereof." The notice set forth in Exhibit E is as follows: "Now comes the above named defendant by his attorney, A. Rosa, and excepts to the verdict of the jury as being contrary to the law and the evidence, and gives notice of motion for a new trial." On November 29th the prisoner's counsel filed in the said cause, in the same court that had tried the case, the following motion for a new trial: "Now comes the above named defendant, by his attorney, A. Rosa, and moves the Court to grant a new trial in the above entitled cause on the ground of newly discovered evidence." This motion is unaccompanied with affidavits, and is not addressed to or filed with the Clerk of the Supreme Court, as it should be, under the authority of *King vs. Reeve, ante*, page 336. There is no motion for a new trial on the ground of the verdict being contrary to the law and the evidence, according to the notice above set forth. It does not, therefore, appear that any motion for a new trial is before the Court, nor anything further under the bill of exceptions.

*A. P. Peterson* (Deputy Attorney-General), *C. Creighton* with him, for the prosecution.

*A. Rosa*, for defendant.